**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE  DIVISION**

PAUL A. HOWELL,

        Petitioner,

v.                                      Case No.: 4:04-cv-299/MCR

MICHAEL D. CREWS, Secretary,
Florida Department of Corrections

        Respondent.

_____/

## ORDER ON EMERGENCY MOTION FOR RELIEF FROM JUDGMENT

Before the court is Paul Howell's Emergency Motion Seeking Relief From Judgment under Federal Rule of Civil Procedure 60(b) (doc. 36) and an accompanying Emergency Motion for Stay of Execution (doc. 38).[1]  Howell is a death- sentenced inmate incarcerated in Florida whose execution is currently scheduled for February 26, 2013 at 6 p.m

**BACKGROUND & PROCEDURAL HISTORY**

Howell was found guilty of first-degree murder  and was sentenced to death on January 10, 1995.   The facts of the case are outlined in Howell's direct appeal as follows:

> In January of 1992, Howell constructed a bomb for the specific purpose of killing Tammie Bailey at her home in Marianna, Florida. Bailey, Howell, and Howell's brother, Patrick, were part of a drug ring involving a number of other individuals in which drugs were obtained in Fort Lauderdale and then sold in Marianna, Florida. Howell intended to eliminate Bailey as a witness because she had knowledge that could link Howell and his brother to a prior murder. The bomb was placed inside a microwave oven and then the oven was gift-wrapped. Howell paid Lester Watson to drive and deliver the microwave to Bailey. Although he knew that Howell had often made pipe bombs, Watson testified that he thought the microwave contained drugs. Howell

---

[1]  The Motion for Stay of Execution will be addressed by separate order.

rented a car for Watson to use for the trip. Watson was accompanied on the trip by Curtis Williams.

While traveling on I–10 toward Marianna, Watson was stopped by Trooper Jimmy Fulford for speeding. Fulford ran a registration check on the car and a license check on Watson, who gave the trooper a false name and birth date because he did not have a valid driver's license. The radio dispatcher contacted the car rental company and was informed that Howell had rented the car. The dispatcher contacted Howell at his home in Fort Lauderdale, Florida, to determine whether the rental car had been stolen from him. Howell told the dispatcher that he had loaned the car to Watson but did not know that Watson would be traveling so far with the vehicle. Howell was informed by the dispatcher that Watson was going to be taken to the Jefferson County Jail. Howell did not give any warning to the dispatcher regarding the bomb.

Deputies Harrell and Blount of the Jefferson County Sheriff's Department arrived at the scene and Watson gave them permission to search the vehicle. Trooper Fulford and the deputies observed the gift-wrapped microwave in the trunk of the car. Watson was arrested for speeding and driving without a valid driver's license and was transported, along with Williams, to the jail by Deputy Blount. Deputy Harrell also proceeded to the jail, leaving Trooper Fulford alone with the rental car. Shortly thereafter, a massive explosion took place at the scene. Testimony presented at Howell's trial by the State's explosives expert indicated that Trooper Fulford had been holding the microwave in his hands when the bomb went off. Trooper Fulford died instantly due to the massive trauma caused by the explosion.

Howell was arrested and charged with Trooper Fulford's murder. Frank Sheffield, a private attorney, was appointed to represent Howell due to a conflict of interest asserted by the Public Defender's Office for the Second Judicial Circuit. Venue of the trial was transferred from Jefferson County to Escambia County.

The jury found Howell guilty of first-degree murder and of making, possessing, placing, or discharging a destructive device or bomb. The jury also returned a special verdict finding that the charge of first-degree murder was established by both proof of premeditated design and felony murder. At the penalty phase, the jury recommended death by a vote of ten to two. The trial court found that the following aggravators applied to the murder: (1) Howell knowingly created a great risk of death to many persons; (2) the murder was committed while Howell was engaged in the unlawful making, possessing, placing, or discharging of a destructive device or bomb; (3) the

murder was committed for the purpose of avoiding or preventing a lawful arrest; (4) the victim was a law enforcement officer engaged in the performance of his official duties; and (5) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (CCP). The trial court also found that the following statutory and nonstatutory mitigators applied: (1) Howell had no significant history of prior criminal activity; (2) the murder was committed while Howell was under the influence of extreme mental or emotional disturbance (given little weight); (3) Howell had served in the military and received an honorable discharge (given little weight); (4) Howell displayed good behavior as a pretrial detainee; and (5) Howell was a good family man (deemed inconsequential). The trial court found that the enormity of the proved aggravating circumstances far outweighed the mitigating circumstances and imposed the death penalty in conformance with the jury's recommendation that Howell be sentenced to death. The trial court declined to impose a sentence on Howell's conviction for constructing the bomb because this charge and the murder charge both arose from a single underlying offense.

*Howell v. State*, 707 So.2d 674, 676-77 (Fla. 1998). Howell's judgment and conviction was affirmed by the Florida Supreme Court and became final on June 26, 1998, the day the United States Supreme Court denied certiorari in his direct appeal. *Id.*; *Howell v. Florida*, 524 U.S. 958, 118 S. Ct. 2381, 141 L. Ed. 2d 747 (1998). Howell filed an initial motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 on August 30, 1999, and an amended motion on October 15, 2002. After an evidentiary hearing, Howell's motion for post-conviction relief was denied, and this denial was affirmed by the Florida Supreme Court on May 6, 2004. *Howell v. State*, 877 So.2d 697 (Fla. 2004). Howell then filed a federal habeas petition in this court on July 26, 2004 (doc. 1), which the state moved to dismiss as time-barred (doc. 9). The court found that Howell had failed to file his federal habeas petition within the deadline provided by AEDPA and that he was not entitled to equitable tolling based on attorney negligence, particularly in light of petitioner's failure to establish his own diligence in ascertaining the federal habeas filing deadline and dismissed the petition as untimely. *See* doc. 13. Howell appealed the order of dismissal to the Eleventh Circuit Court of Appeals, which later affirmed the order. *See Howell v. Crosby*, 415 F.3d 1250 (11th Cir. 2005) cert. denied, 546 U.S. 1108, 126 S. Ct. 1059, 163 L. Ed.2d 885 (2006).

**DISCUSSION**

As a threshold matter, Respondents argue the court lacks subject matter jurisdiction to entertain Howell's emergency motion. *See* doc. 40. Respondents contend that while Rule 60(b) permits a party to seek relief from a judgment on certain limited grounds, it cannot be used by habeas petitioners to raise new claims for habeas relief, as this use would circumvent the AEDPA requirement that a petitioner obtain the approval of the appropriate court of appeals before filing a second or successive habeas petition. *See Gonzalez v. Crosby*, 545 U.S. 524, 125 S. Ct. 2641, 2647–48, 162 L. Ed.2d 480 (2005); *see also* 28 U.S.C. § 2244(b)(3)(A). The Supreme Court has stressed that a habeas petitioner filing a Rule 60(b) motion should be held to the standards of section 2244(b) where his motion contains a "claim," as the term is used in that section; i.e. "an asserted federal basis for relief from a state court's judgment of conviction." *Gonzalez*, 545 U. S at 530. Section 2244(b) of the AEDPA provides in pertinent part as follows:

> (b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless --
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
>
> (3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

28 U.S.C. § 2244(b).  Thus, pursuant to § 2244(b), when a  Rule 60(b) motion seeks to raise a claim already adjudicated on the merits or seeks to raise a new ground for habeas relief, the district court lacks jurisdiction to consider the motion without approval from the appropriate court of appeals.  A Rule 60(b) motion, however, can be appropriate where a petitioner "does not assert, or reassert, claims of error in [his] state conviction." *Gonzalez*, 545 U.S. at 537.  When a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings, a Rule 60(b) motion is appropriate. *See Gonzalez*, 545 U.S. at 532 n.4 (explaining that a Rule 60(b) motion is not successive "when a movant asserts that a previous ruling which precluded a merits determination was in error-for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar.").

In this case, Howell's habeas petition was dismissed as untimely under the AEDPA's statute of limitations. Howell's emergency motion asserts in significant part that his habeas case should be reopened because intervening changes in Supreme Court law make this procedural ruling erroneous.  Accordingly, because Howell's emergency motion attacks a defect in the integrity of his prior federal habeas proceeding, this court has jurisdiction to consider his Rule 60(b) motion.

Rule 60(b) of the Federal Rules of Civil Procedure authorizes a court is to relieve a party from a final judgment, order, or proceeding for the following reasons:

(1)   mistake, inadvertence, surprise, or excusable neglect;

(2)   newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3)   fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4)   the judgment is void;

(5)   the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6)   any other reason that justifies relief.

Fed.R.Civ.P. 60(b). A motion filed under Rule 60(b)(1), (2), or (3) must be filed within one year of the entry of the judgment or order or the date of the proceeding. Rule 60(c)(1). A motion filed under the catchall provision contained in Rule 60(b)(6) must be filed within a "reasonable time ... after the entry of the judgment or order."

Howell makes three principal arguments in support of his request for Rule 60(b) relief: (1) an intervening change in law resulting from the Supreme Court's decision in *Holland v. Florida*, ___ U.S. ___, 130 S. Ct. 2549, 177 L. Ed.2d 130 (2010) constitutes an extraordinary circumstance in his case; (2) an intervening change in law resulting from the Supreme Court's decision in *Martinez v. Ryan*, ___ U.S. ____, 132 S. Ct. 1309 (2012) constitutes an extraordinary circumstance in his case; and (3) he is actually "innocent" of the death penalty. *See Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed.2d 808 (1995), and *Sawyer v. Whitley*, 505 U.S. 333, 112 S. Ct. 2514, 120 L. Ed.2d 269 (1992).

Initially, the court finds that Howell's requests to reopen his habeas case based on *Holland* and his claim of actual innocence are not timely because the motion was not filed within a "reasonable time" as required by Rule 60(b). Regarding his request to reopen in light of *Holland*, Howell waited over two and one-half years from the time *Holland* was decided before filing the present motion.[2] Notably, Howell does not identify any extenuating circumstances which would have prevented him from filing the present motion closer in time to the issuance of the *Holland* decision. With regard to his argument that he is actually "innocent" of the death penalty, Howell has delayed even longer. *Schlup* was decided in January of 1995; *Sawyer* in June of 1992. While both of these court decisions were available to Howell when he filed his response to the state's motion to dismiss his federal habeas petition as untimely in 2004, he did not argue actual innocence at that time to excuse his untimely filing. *See* doc. 11. Inexplicably, he waited another nine years before making an actual innocence claim before this court. *See* doc. 36, pp. 45-55. Accordingly, Howell may not rely on the Supreme Court's decision in *Holland* or a claim of

---

[2] Holland was decided on June 14, 2010; yet the pending motion was not filed until February 20, 2013.

actual innocence on the death penalty sentence as grounds for Rule 60(b) relief in this case.

Notwithstanding, in the interests of completeness, the court will address Howell's Rule 60(b) arguments on their merits.

1.    *Holland v. Florida*

A motion under Rule 60(b)(6) must be supported by "extraordinary circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 536, 125 S. Ct. 2641, 2650, 162 L. Ed.2d 480 (2005). Although an intervening change in law can constitute an extraordinary circumstance under Rule 60(b)(6), s*ee, e.g., Mock v. Bell Helicopter Textron, Inc.*, 373 F. App'x 989, 991 (11th Cir. 2010)(unpublished) (affirming the district court's decision to grant Rule 60(b)(6) motion based on an intervening change in the law), the Supreme Court has cautioned that such circumstances will rarely occur in the habeas context.  *Gonzalez*, 545 U.S. at 535.  To be sure, "[a] change of law alone does not provide grounds for Rule 60(b)(6) relief."  *Ramsey*, *supra*, 304 F. App'x at 829;  *see Agostini v. Felton*, 521 U.S. 203, 239, 117 S. Ct. 1997, 2018, 138 L. Ed.2d 391 (1997) ("[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6) ...");  *Ritter v. Smith*, 811 F.2d 1398, 1401-03   (11th Cir. 1987)(something more than a "mere" change in the law is necessary to provide the grounds for Rule 60(b)(6) relief and listing factors for consideration).  Moreover, the party seeking relief under Rule 60(b)(6) has the burden of showing that "absent such relief, an 'extreme' and 'unexpected' hardship will result."  *Rease v. Harvey*, 376 F. Appx. 920, 921 (11th Cir. 2010)(citing *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984).

The first issue presented in Howell's motion is whether the Supreme Court's *Holland* decision constitutes an extraordinary circumstance under Rule 60(b)(6).  *Holland* recognized that the AEDPA's one-year limitations period may be subject to equitable tolling even in the absence of  attorney bad faith or dishonesty, so long as the petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing.  *Id*. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 1815, 161 L. Ed.2d 669 (2005)).  Howell

argues that under *Holland* his postconviction counsel's action of missing the federal ADEPA filing deadline, which he characterizes as "grossly incompetent," amounts to an extraordinary circumstance that prevented him from filing the petition timely and constitutes an extraordinary, intervening change in the law for purposes of Rule 60(b)(6).[3] (Doc. 36, p. 29). The court disagrees and finds as a preliminary matter that *Holland* did not constitute an intervening change in the law for purposes of this case.

Although in *Holland* the Supreme Court rejected as too rigid the Eleventh Circuit's hardline rule that the AEDPA's one-year limitations period was not subject to equitable tolling absent "bad faith, dishonesty, divided loyalty, mental impairment, or so forth on the lawyer's part", regardless of the degree of professional negligence or incompetence, *(Holland,* at 2563 (quoting *Holland v. Florida*, 539 F.3d 1334, 1339 (11th Cir. 2008)), nothing in *Holland* suggests a departure from the longstanding principle of law that a "garden variety claim of excusable neglect," such as an attorney's miscalculation of a filing deadline, does not warrant the application of equitable tolling; to the contrary, *Holland* reaffirms that well-settled principle.[4] *Id*. at 2564 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453, 498, 112 L. Ed.2d 435 (1990)); *see Lawrence v. Florida*, 549 U.S. 327, 336-337, 127 S. Ct. 1079, 1085, 166 L. Ed. 2d 924 (2007) (holding that an "[a]ttorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel.");[5] *see*

---

[3] Howell's attorney erroneously assumed that an extension of the rule 3.851 time period would also extend the AEDPA deadline. In an affidavit attached to Howell's emergency motion, counsel stated that "[i]t was my understanding that by filing a motion for extension of time to file the aforementioned post-conviction motion in state court that the Anti-terrorism and Effective Death Penalty Act statute of limitations would be tolled. I filed such a motion for extension, which was granted, and therefore delayed filing the motion until after the one-year AEDPA deadline." *See* doc. 36, Attachment M-1 at 1.

[4] *Holland* was remanded to the Eleventh Circuit for further proceedings.

[5] The basis for the holding that attorney miscalculation is not sufficient to warrant equitable tolling in the postconviction context is found in the AEDPA statute. *See* 28 U.S.C. § 2254(i) (providing that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). *See also Coleman v. Thompson*, 501 U.S. 722, 755–57, 111 S. Ct. 2546, 2567-68,115 L. Ed.2d 640 (1991)(addressing attorney negligence in the context of procedural default).

*also Coleman v. Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2546,115 L. Ed.2d 640 (1991)("Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'"); *Irwin*, *supra*, 498 U.S. at 92 (quoting Link v. Wabash R. Co., 370 U.S. 626, 634, 82 S. Ct. 1386, 8 L. Ed.2d 734 (1962) ("Under our system of representative litigation, 'each party is deemed bound by the acts of his lawyer-agent.'"); *see also Maples v. Thomas*, __U.S. ___, 132 S. Ct. 912, 922,181 L. Ed.2d 807 (2012) (quoting *Coleman*, 501 U.S., at 753–754, 111 S. Ct. 2546)(reaffirming "when a petitioner's postconviction attorney misses a filing deadline, the petitioner is bound by the oversight and cannot rely on it to establish cause..." but finding on the facts presented that the attorney's misconduct rose to the level of abandonment and thus was an extraordinary circumstance). Likewise, this principle has long been a mainstay of Eleventh Circuit jurisprudence. *See e.g. Hutchinson v. Florida*, 677 F.3d 1097, 1100 (11th Cir. 2012)(holding petitioner not entitled to equitable tolling under *Holland* where his attorney miscalculated the filing deadline, noting that "[if] attorney miscalculation, error, or negligence were enough for equitable tolling, the § 2244(d) statute of limitations would be tolled to the brink of extinction because in practically every case where there is a failure to meet the filing deadline an attorney is at fault.")); *Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1071 (11th Cir. 2011) (same); *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000)("[a]ny miscalculation or misinterpretation by Steed's attorney in interpreting the plain language of the statute does not constitute an extraordinary circumstance sufficient to warrant equitable tolling."); *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999)(mere attorney negligence is not a basis for equitable tolling); *Helton v. Sec'y for Dep't of Corr.*, 259 F.3d 1310, 1313 (11th Cir. 2001) (petitioner's attorney's act of misinforming him as to deadline to file federal habeas petition did not constitute "extraordinary circumstance" warranting equitable tolling). Therefore, as to simple negligence by an attorney in miscalculating the AEDPA filing deadline in the equitable tolling context, *Holland* did not work a change in the law for purposes of Rule 60(b)(6).

However, even if *Holland* does constitute an intervening change in the law on the facts of this case, the court finds as a matter of law that the change does not amount to an

extraordinary circumstance for purposes of Rule 60(b).  In *Gonzalez*, *supra*, the Supreme Court, in a similar context, considered whether a change in the law regarding the interpretation of the AEDPA's statute of limitations "tolling" provision that occurred after the petitioner's initial habeas claim had been dismissed constituted an extraordinary circumstance justifying relief under Rule 60(b).   The district court in *Gonzalez* had dismissed Gonzalez's habeas petition as time-barred, finding that a certain state collateral motion had not been "properly filed," and therefore did not toll the running of the statute of limitations.  The Eleventh Circuit denied a certificate of appealability, and Gonzalez sought no further review at that time.  Some seven months later, the Supreme Court decided *Artuz v. Bennett*, 531 U.S. 4, 121 S. Ct. 361, 148 L. Ed.2d 213 (2000) and established a different standard than the one applied by the District Court in dismissing Gonzalez's habeas petition as untimely.[6]  Gonzalez then filed a Rule 60(b) motion in the district court seeking to vacate the prior order dismissing his case. The Supreme Court, assuming that the district court's statute of limitations ruling and dismissal of Gonzalez's habeas petition had been erroneous under the interpretation of the law as set out in *Artuz*, concluded that this change in interpretation of the AEDPA statute of limitations did not constitute an extraordinary circumstance   justifying relief under Rule 60(b)(6).   In so holding, the Supreme Court explained:

> The District Court's interpretation was by all appearances correct under the Eleventh Circuit's then-prevailing interpretation of 28 U.S.C. § 2244(d)(2). It is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation. Although our constructions of federal statutes customarily apply to all cases then pending on direct review, *see*, *e.g.*, *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 97, 113 S. Ct. 2510, 125 L. Ed.2d 74 (1993), not every interpretation of the federal statutes setting forth the requirements for habeas provides cause for

---

[6]  In *Artuz v. Bennett*, 531 U.S. 4, 121 S. Ct. 361, 148 L. Ed.2d 213 (2000), the Supreme Court determined that an application raising procedurally barred claims was nonetheless "properly filed" for purposes of § 2244(d)(2), and that the district court erred in dismissing the petition as untimely.   The Supreme Court determined that an application is "filed," as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record, and an application for state postconviction relief or collateral review is "properly filed," as required to toll the period under AEDPA for filing a federal habeas petition, when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. *Id*. at 8.

reopening cases long since final. If *Artuz* justified reopening long-ago dismissals based on a lower court's unduly parsimonious interpretation of § 2244(d)(2), then *Pace v. DiGuglielmo*, 544 U.S. 408, 125 S .Ct. 1807, 161 L. Ed.2d 669 (2005), would justify reopening long-ago grants of habeas relief based on a lower court's unduly generous interpretation of the same tolling provision.

*Gonzalez*, 545 U.S. at 536-37 (footnote omitted).[7] The same analysis applies to foreclose Howell's *Holland* argument.[8]

Finally, Howell contends that *Holland* should be extended to every capital defendant whose court appointed attorney misses a deadline that results in the waiver of the defendant's federal habeas rights, arguing that capital petitioners have a due process right to competent postconviction representation. Doc. 36, pp. 33-39. This position is not supported by the law. Indeed, the Supreme Court has made clear there is no constitutional right to an attorney in state postconviction proceedings, whether under the Sixth or Eighth Amendments or the Due Process Clause. *See e.g., Coleman v. Thompson*, 501 U.S. 722, 752, 111 S. Ct. 2546,115 L. Ed.2d 640 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 107 S. Ct. 1990, 95 L. Ed.2d 539 (1987); *Murray v. Giarratano*, 492 U.S. 1, 109 S. Ct. 2765, 106 L. Ed.2d 1 (1989) (applying the rule to capital cases). Howell also argues that Florida's collateral representation scheme requires effective representation; however, this argument has been squarely rejected as well. See *Lawrence*, *supra*, 549 U.S. at 337 (wherein the Supreme Court instructed that "a State's effort to assist prisoners in postconviction proceedings does not make the State accountable for a prisoner's delay. Lawrence has not alleged that the State prevented him from hiring his own attorney or from

---

[7] The Supreme Court also noted that the petitioner's lack of diligence in pursuing his statute of limitations argument was a contributing factor in determining whether extraordinary circumstances existed in his case. *Id.* at 537-38.

[8] Howell also argues that his case involves an "extraordinary circumstance" because he suffered from mental incapacities at the time of the missed deadline and thus was unable to understand his rights and obligations under AEDPA. *See* Doc. 26, p. 31-33. Such incapacity, assuming it existed, would be relevant to Howell's diligence in protecting his federal rights. However, equitable tolling requires both an extraordinary circumstance and a showing that the petitioner has been pursuing his rights diligently. *See Lawrence*, *supra*, 549 U.S. at 336. Because Howell has failed to demonstrate an extraordinary circumstance justifying Rule 60(b) relief, he would not be entitled to equitable tolling even if he were able to establish the diligence prong.

representing himself. It would be perverse indeed if providing prisoners with postconviction counsel deprived States of the benefit of the AEDPA statute of limitations."). *Id*. *See also Jackson v. Crosby*, 375 F.3d 1291 (11th Cir. 2004) (rejecting equitable tolling in a capital case that attorney's miscalculation of applicable time limits does not support application of equitable tolling). As noted in a special concurrence in *Jackson*, ". . . the rules relating to timeliness of filing and appellate court jurisdiction apply without respect to the identity of parties or the nature of the case. We do not have one set of rules for petitioners and their attorneys in capital cases and another set for everyone else." *Id*. at 1300 (Carnes, J., concurring); *Woodford v. Garceau*, 538 U.S. 202, 206, 123 S. Ct. 1398, 1401, 155 L. Ed.2d 363 (2003)(observing that "Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases"); *Zack v. Tucker*, 704 F.3d 917 (11th Cir. 2013)(en banc)(noting that "the purpose of the habeas statute of limitations is to end delays in criminal cases."). Howell is not entitled to relief under Rule 60(b)(6) based on *Holland*.

   2.   *Martinez v. Ryan*

   Howell contends that *Martinez v. Ryan*, ___ U.S. ____, 132 S. Ct. 1309 (2012), constitutes an intervening change of law and an extraordinary circumstance under *Gonzalez* sufficient to reopen his habeas petition. In *Martinez*, the Court addressed whether ineffective assistance of counsel in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding. The *Martinez* Court, modifying its prior holding in *Coleman v. Thompson, supra*, that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default, recognized a narrow exception for ineffective assistance of counsel at initial-review collateral proceedings, deciding that ineffective assistance of counsel during the initial-collateral review stage may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial. *Id*. at 1315. The Court held "where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective

assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id*. at 1320.

*Martinez* is not an intervening change in the law for purposes of Howell's case. *Martinez* is a narrow holding limited to ineffective assistance of trial counsel claims and does not extend to ineffective assistance of appellate or postconviction counsel. In *Martinez*, the Court reiterated that "*Coleman* held that an attorney's negligence in a postconviction proceeding does not establish cause, and this remains true except as to initial-review collateral proceedings for claims of ineffective assistance of counsel at *trial*." *Id*. at 1316. (emphasis added). The Court recognized a distinction when attorney error precludes state court review of a claim entirely and when it does not. The Court stated, "[t]he same is not true when counsel errs in other kinds of postconviction proceedings. While counsel's errors in these proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding." *Id*. The Court continued:

> The rule of *Coleman* governs in all but the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. *See* 501 U.S., at 754, 111 S. Ct. 2546; *Carrier*, 477 U.S., at 488, 106 S. Ct. 2639. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Id*. at 1320. The ineffectiveness of which Howell complains in his emergency motion is that of his postconviction counsel in failing to preserve his federal habeas deadline. Doc. 36, p. 44. *Martinez* does not apply in this circumstance.

Additionally, Howell argues that his trial attorney's alleged conflict of interest, detailed in Howell's emergency motion, substantially affected his representation of Howell in the area of penalty phase mitigation investigation and presentation. Doc. 36, p.12. This alleged ineffectiveness is the underlying claim which Howell hopes to pursue in federal court if his federal habeas case is reopened. Howell raised the conflict issue in his direct

appeal, which he alleged led to ineffective representation. The Florida Supreme Court held as follows:

> Howell's only point on appeal with reference to his conviction is his contention that the trial court erred in refusing to appoint different counsel for him and in refusing to appoint a second attorney. The facts surrounding this claim are set forth below.
>
> Because of a conflict of interest asserted by the public defender's office, attorney Frank Sheffield was appointed to represent Howell in the defense of this case. Howell also faced federal charges arising out of much of the same conduct which had given rise to the State's indictment. Sheffield had also been appointed to represent Howell in defense of the federal charges. On March 18, 1993, the state attorney moved to disqualify Sheffield from this case, noting the fact that Sheffield had been allowed to withdraw from the federal prosecution. Three days before, Howell had written to the judge complaining that Sheffield had failed to communicate with him and that he wanted William Pfeiffer, who had replaced Sheffield during the federal trial, to serve as his counsel in state court and asked that attorney Clyde Taylor be appointed to assist Pfeiffer. At the hearing, the prosecutor stated that the State's motion was not predicated upon any belief that Sheffield was not rendering effective assistance but rather had been filed to bring to the court's attention that he had been relieved from representing Howell in federal court. Sheffield explained that he had received a telephone threat during the federal trial and that he had requested leave to withdraw, which had been granted. With respect to the current representation, Sheffield stated:
>
> > I am perfectly willing to continue representing Mr. Howell in this state case. I have tons and tons of discovery. We have taken depositions. I have no qualms whatsoever about my reputation as far as my abilities to represent him. I have handled over a dozen death cases. I have the experience in handling death cases, and I am more than willing to continue representing him. I see no reason why there should be a change at this point.
>
> Judge Davey, who was then presiding over the case, asked Howell his views, and Howell stated that he did not want Sheffield to represent him because he had not shared discovery matters with him. After further examination of Sheffield's performance, the court stated that it was satisfied that Sheffield had not been removed from the federal case due to any lack of diligence, that it found no basis to question his performance in the instant case, and noted that attorney Pfeiffer had no experience in capital cases.

On June 4, 1993, the State filed a motion for rehearing, attaching partial transcripts of the federal proceeding. However, this motion was not called up for hearing until November 19, 1993, at which point Judge Steinmeyer was presiding over the case. The prosecutor explained that the transcripts shed further light on the telephone incident which indicated "an apparent conflict" and that he felt that the court should inquire further of Sheffield and Howell in this respect. Sheffield then recounted some of the difficulties he had encountered during the federal proceeding and stated that under the federal practice during the trial he had been continuously served with new discovery but that Mr. Howell would not communicate with him concerning these matters, and their relationship became strained. At this point, Sheffield had obtained a psychological evaluation of Howell. The doctor reported that he was not incompetent to proceed, but that because of some perceived problem that Howell had with Sheffield at that point, he had a problem communicating with Sheffield. However, U.S. District Judge William Stafford denied Sheffield's motion to withdraw as counsel, indicating that he did not believe there were sufficient grounds to remove him. Sheffield went on to explain that on the following day his wife received a phone call at Sheffield's office from an unknown source in which the caller said that "if Paul Howell goes down, Mr. Sheffield is going down too." Sheffield explained that when he brought this to Judge Stafford's attention, the judge granted his motion for discharge. Sheffield then stated:

> Since that time Mr. Howell and I have communicated with one another. He has communicated with me in this case. This is not a case where there are [Jencks] Act rules that you have to deal with and that you don't get discovery in. We are getting discovery. We have taken depositions. I have visited him in the Broward County Jail. We have no problems between us with me continuing to represent him in this case, and the problems that were occurring at that time in the federal case no longer exist.
>
> Secondly, I am not concerned at this point in time that there is somebody out there coming to get me. I have had threats before. I am sure I will have threats again. I am perfectly willing to continue on this case to represent Mr. Howell and to represent his best interests in this case.
>
> ****
>
> So I certainly have no problem continuing to represent Mr. Howell. I have been working in this case since the beginning; and certainly from the standpoint of continuing with the case

from the judicial perspective, there will be a substantial delay if new counsel is put in because they are going to have to come up to speed on everything that has been going in this case. We have been down to at least two week-long sessions taking depositions in it. I have prepared motions and have worked with the other counsel in the case. I see nothing to be gained from the standpoint of pursuing this case by changing counsel. I don't think that Mr. Howell at this point wants to change counsel. So I think it's a moot point.

The state attorney then sought an affirmative representation from the defendant with respect to whether to remove Sheffield from the case. Upon being sworn, Howell said that he wanted to hear about the results of the investigation regarding the bomb threat because his wife and mother had been upset by insinuations that they had precipitated the threat. A special agent of the U.S. Drug Enforcement Administration then testified that he had investigated the threat but was unable to substantiate from the phone records that a telephone call had been made to Sheffield's office at the time it was reported. When interrogated by Sheffield, the agent expressed the opinion that his wife had either falsified the bomb threat or that there was a mistake in the company's computer system. When asked his position with respect to Mr. Sheffield, Howell expressed concern over the allegation of the bomb threat *679 should it happen again. At this point, the following colloquy occurred:

> THE COURT: The point is, is there any problem between you and Mr. Sheffield? If there is no problem between you and Mr. Sheffield, it makes no difference to me what the problem is between Mr. Sheffield and the Drug Enforcement Agency.
>
> DEFENDANT PAUL HOWELL: That matter has not been resolved yet.
>
> THE COURT: Right.
>
> DEFENDANT PAUL HOWELL: Until somebody announces it never happened, it's still a problem.
>
> THE COURT: Well—
>
> MR. SHEFFIELD: Judge, I can tell you that if it is a problem, it is only a problem with Mr. Howell because I can represent to this Court that I intend to represent Mr. Howell, as I have told

him, to the fullest extent that I can possibly do so, to whatever it takes. And I have already indicated on the record that if Jefferson County goes broke paying me to represent Mr. Howell, I intend to do it.

MR. SCHNEIDER: The essence, I think, of the inquiry is exactly what Mr. Sheffield said. You know, as far as he's concerned it's fine, but that is not the inquiry that the Court needs to make. And until and unless Mr. Howell expresses on the record an affirmative waiver of any sort of conflict that may be caused by this information, I think that we have a—

THE COURT: I am not going to require M. Howell to express anything on the record, affirmatively or negatively, if he chooses not to; but I am giving him an opportunity to be heard in this regard, and if he wants to say anything to me he can say something to me about that. But it appears to me at this point that there does not, there is not a conflict between Mr. Sheffield and Mr. Howell that would interfere with Mr. Sheffield's ability to represent him.

Now, Mr. Howell, if you want to make any comments other than that I will be happy to hear you, but at this point you and Mr. Sheffield appear to be able to communicate. And as Judge Stafford said in the transcript in the federal case, Mr. Sheffield is probably as good as you're going to get around here, and I think it would certainly be to your benefit to have him represent you. But I want to hear from you if you want to say anything.

DEFENDANT PAUL HOWELL: As I said before, the Court can determine it.

THE COURT: Well, if you leave it up to the Court, at this point I see no reason to disqualify Mr. Sheffield from representing Mr. Howell and I will deny the motion.

It is evident that any apprehension that Sheffield had concerning the bomb threat which had allegedly occurred some nine months before had dissipated. When Howell was asked concerning his position on the matter, he deferred to the court's judgment. From this record, we cannot say that the court abused its discretion in not disqualifying Sheffield from representing defendant. The State had made the motion out of an abundance of caution,

and at no time during the hearing before Judge Steinmeyer did Howell ask that Sheffield be removed as his attorney.

The next event relevant to this point on appeal occurred approximately nine months later when attorney Sheffield moved to have a second attorney appointed due to the alleged complexity of the case and the extensive preparation involved. After hearing the argument, the court denied the motion, noting that Sheffield had been able to familiarize himself with the charges by virtue of his participating in the federal proceedings. Thereafter, it was brought to the court's attention that Sheffield had obtained the appointment of a mental health expert but that Howell refused to speak with this individual because he did not wish the case to be defended on the grounds of incompetency. While Sheffield maintained that the insanity defense was the "only defense" available, Howell disputed this and the judge observed that this was Howell's choice to make. During the trial, which commenced on October 12, 1994, after a change of venue to Escambia County, Howell also made various complaints concerning Sheffield's representation. However, Howell never requested the opportunity to represent himself. In each instance, the trial court considered Howell's complaints and concluded that Sheffield was providing him with proper representation.

In *Hardwick v. State*, 521 So.2d 1071 (Fla.1988), this Court adopted the procedure announced in *Nelson v. State*, 274 So.2d 256 (Fla. 4th DCA 1973), to be followed when a defendant complains that his appointed counsel is providing him with ineffective representation. When this occurs, the trial judge is required to make a sufficient inquiry of the defendant to determine whether or not appointed counsel is rendering effective assistance to the defendant. However, the trial judge's inquiry can only be as specific as the defendant's complaint. *Lowe v. State*, 650 So.2d 969 (Fla.1994). Here, the trial court made an adequate inquiry into Howell's complaints of ineffectiveness and properly determined them to be without merit. Because Howell never requested to represent himself, he was not entitled to an inquiry on the subject of self-representation under *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed.2d 562 (1975). Further, we find no abuse of discretion in the trial court's denial of Howell's request for the appointment of another attorney to assist Sheffield in his defense. *Armstrong v. State*, 642 So.2d 730 (Fla.1994); *Reaves v. State*, 639 So.2d 1 (Fla.1994).

*Howell v. State*, 707 So.2d at 677-80.[9]  Because Howell's conflict of interest claim and resulting ineffective assistance of counsel claim were adjudicated in state court, *Martinez* does not apply to his case.

However, even if the new procedural rule announced in *Martinez* were an intervening change in the law that could somehow impact Howell's case, the decision would not afford Howell relief in any event, as it does not amount to an extraordinary circumstance under *Gonzalez*.  *Martinez* did not create a new rule of constitutional law, *i.e.*, a right to effective assistance of collateral counsel.  *See Martinez*, 132 S.Ct. At 1315 ("This is not the case, however, to resolve whether that exception [to the rule that there is no right to counsel in collateral proceedings] exists as a constitutional matter." *Martinez*, 132 S. Ct. at 1315; s*ee also In re Sepulvado*, ___F.3d ___, 2013 WL 462078, *3 (5th Cir., Feb. 7, 2013)("To the extent that Sepulvado relies on a supposed constitutional right to the effective assistance of post-conviction counsel, he misapprehends the holding and import of *Martinez*, which did not alter our rule that "the Sixth Amendment does not apply in habeas proceedings."); *Adams v. Thaler*, 679 F.3d 312, 320 (5th Cir. 2012)(holding that *Martinez* decision is simply a change in decisional law and is "not the kind of extraordinary circumstance that warrants relief under Rule 60(b)(6). The Court's crafting of a narrow exception to *Coleman* is "'hardly extraordinary.'" (citation omitted)). Thus, the court finds that *Martinez* does not constitute an extraordinary circumstance under Rule 60(b)(6) in Howell's case.

3.    Actual Innocence

Howell contends that his actual "innocence" of the death penalty constitutes an exception to AEDPA's statute of limitations.  He argues that but for the conflict of interest

---

[9]  With respect to this issue on appeal of his postconviction proceeding, the Florida Supreme Court held that "to the extent that Howell questions the sufficiency of the evidence to establish either premeditation or felony-murder, and reasserts the alleged conflict of interest based on the alleged death threat during the federal trial addressed in the direct appeal, these issues are procedurally barred on collateral review. *See Harvey v. Dugger*, 656 So.2d 1253, 1256 (Fla.1995) (holding that claims that were or could have been raised on direct appeal are procedurally barred from consideration in a rule 3.850 motion)." *Howell v. State*, 877 So.2d 697, 704 n.3 (2004).

error no reasonable juror would have found him eligible for the death penalty. Doc. 36, p. 46. He specifically alleges that his counsel failed to investigate and present mitigation evidence, *see* doc. 36, p. 51 n.28, and failed to argue that the trooper victim's violation of Florida Highway Patrol procedures with regard to opening packages was an intervening cause of his death. Howell did not raise his actual innocence as an exception to AEDPA's statute of limitations when this court considered his habeas petition in 2004, and he does not address this failure in his emergency motion. Howell has also failed to cite to any Supreme Court case recognizing actual innocence as an extraordinary circumstance under Rule 60(b)(6).[10] Additionally, as noted above, Howell has not brought this claim within a reasonable time.

Assuming, however, that actual innocence is an extraordinary circumstance under *Gonzalez*, Howell is still not entitled to relief. The Court in *Sawyer v. Whitley, supra*, 505 U.S. at 347, held that "the 'actual innocence' requirement must focus on those elements that render a defendant eligible for the death penalty, and not on additional mitigating evidence that was prevented from being introduced as a result of a claimed constitutional error." The Court agreed with the test previously articulated by the Eleventh Circuit as follows: "a petitioner may make a colorable showing that he is actually innocent of the death penalty by presenting evidence that an alleged constitutional error implicates *all* of the aggravating factors found to be present by the sentencing body; that is, but for the alleged constitutional error, the sentencing body *could not* have found *any* aggravating factors and thus the petitioner was ineligible for the death penalty. In other words, the petitioner must show that absent the alleged constitutional error, the jury would have lacked the discretion to impose the death penalty; that is, that he is *ineligible* for the death penalty." *Johnson v. Singletary*, 938 F.2d 1166, 1183 (11th Cir. 1991)(emphasis in original). Later, in *Calderon v. Thompson*, 523 U.S. 538, 559, 118 S. Ct. 1489, 140 L. Ed.2d 728

---

[10] The court notes that the question of whether there is an actual innocence exception to the requirement that a petitioner demonstrate an extraordinary circumstance that prevented him from timely filing his habeas petition is currently pending before the Supreme Court. *See McQuiggin v. Perkins*, 133 S.Ct. 527,184 L.Ed.2d 338 (No. 12-126)(2012).

(1998), the Court held that to the extent a capital petitioner contests the special circumstances rendering him eligible for the death penalty, the *Sawyer* "clear and convincing" standard applies, irrespective of whether the special circumstances are elements of the offense of capital murder or mere sentencing enhancers.  And, more recently, in *San Martin v. McNeil*, 633 F.3d 1257, 1267–68 (11th Cir. 2011), the Eleventh Circuit stated, "[a] court also may consider an untimely § 2254 petition if, by refusing to consider the petition for untimeliness, the court thereby would endorse a fundamental miscarriage of justice because it would require that an individual who is actually innocent remain imprisoned." (internal quotation marks omitted). The court noted that the actual innocence exception is "exceedingly narrow in scope," and the petitioner must demonstrate that he is factually innocent rather than legally innocent.  *Id*.  Moreover, the court noted that a court may consider an untimely petition if the petitioner can show that he is "'innocent' of the death penalty because none of the aggravating factors legally necessary for invocation of the death penalty applied." *Sibley v. Culliver*, 377 F.3d 1196, 1205 (11th Cir. 2004).  The court stated that "[t]he review of an actual innocence of death claim will conclude when the court is satisfied of the existence of the minimum state law requirements concerning the presence of aggravating factors."  *San Martin*, 633 F.3d at 1268.

In sentencing Howell to death, the state trial court relied on the following statutory aggravators: (1) Howell knowingly created a great risk of death to many persons; (2) the murder was committed while Howell was engaged in the unlawful making, possessing, placing, or discharging of a destructive device or bomb; (3) the murder was committed for the purpose of avoiding or preventing a lawful arrest; (4) the victim was a law enforcement officer engaged in the performance of his official duties; and (5) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (CCP).  In his direct appeal, Howell challenged several of these aggravators, and the Florida Supreme Court affirmed the trial court's decision on each one.  *See Howell v. State*, 707 So.2d at 680-82.  In the instant emergency motion, Howell maintains that his counsel was ineffective in failing to challenge the aggravator that Trooper Fulford was a

law enforcement officer engaged in the performance of his official duties by not asserting in mitigation that the trooper violated a provision of the Florida Highway Patrol Manual instructing troopers not to open wrapped packages.[11] *See* doc. 36, pp. 52-53. The Florida Supreme Court rejected this argument in Howell's postconviction proceeding.  The court held "[w]e conclude again that counsel made a reasonable strategic decision that introducing the evidence of the policy violation would have alienated the jury without contributing substantially to mitigation." *Howell v. State*, 877 So.2d 697, 704.  This court also notes that four other aggravators plainly applied in Howell's case.  Thus, Howell has not met the standard for actual innocence by showing that but for the alleged ineffective assistance of his counsel, the trial court could not have found *any* aggravating factors in his case, and he is not entitled to relief under Rule 60(b)(6) based on actual innocence.

Accordingly, Howell's motion for relief from judgment under Rule 60(b)(6) (doc. 36) is DENIED.

**DONE AND ORDERED this 23rd day of February, 2013.**

s/ *M. Casey Rodgers*

**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[11]    Howell also asserts that this argument should have been used to defeat the law enforcement aggravating circumstance.

Case No. 4:04cv299/MCR